972 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lisa PERRINO, Plaintiff-Appellant,
v.
CITY OF NEWTON FALLS, Village of Lordstown; Martin
Dematteis; Debora Witten; R. Mark Rohr,
Defendants-Appellants.
 No. 91-4023.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1992.
 
 Before RALPH B. GUY Jr. and RYAN, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Lisa Perrino, a victim of domestic abuse and a resident of the Village of Lordstown, Ohio, appeals the entry of summary judgment in favor of the neighboring City of Newton Falls and its chief legal officer. In her 42 U.S.C. § 1983 suit, Perrino claimed that the contract by which the Newton Falls prosecutor agreed to handle all of Lordstown's criminal cases made that prosecutor's own city and his supervisor responsible for the allegedly inadequate prosecution of Lordstown's domestic violence cases. The district court found that Perrino had failed to demonstrate that Newton Falls and its law director were vested with "final policymaking authority" over Lordstown's criminal cases so as to render them liable for the claimed violation of equal protection. Although the case presents a close question, we affirm.
 
 I.
 
 2
 Lacking its own municipal court, the Village of Lordstown contracted with the prosecutor of Newton Falls to prosecute Lordstown's criminal cases in the Newton Falls municipal court.[1] In return for providing "full range prosecution services," Lordstown paid (to Newton Falls) one-third of the prosecutor's salary. This arrangement had been in effect for 10 years. Lordstown does have a legal officer known as a "village solicitor," but his job apparently is limited to representing the Lordstown city council.
 
 
 3
 Perrino's lawsuit stems from the handling of several criminal charges against her former husband. In 1988, Perrino went to the Newton Falls prosecutor's office to file a complaint, stating that her estranged husband had entered her home, threatened her, and attempted to take their child. Mr. Perrino was charged with aggravated menacing and domestic violence. The prosecutor told Perrino that she need not be present at the hearing on those charges.
 
 
 4
 As a result of a plea bargain, Mr. Perrino pleaded no contest to the aggravated menacing charge in exchange for the dismissal of the domestic violence charge. The court suspended the $250 fine and the 30-day jail term upon the condition that there be no similar offenses within one year. That same day, the prosecutor wrote to plaintiff Perrino to notify her of the terms of the plea bargain. He explained that his decision to recommend the plea was based on his review of the most recent report of the domestic relations referee regarding the couple's pending divorce. Perrino claims that the referee's report was inaccurate and that the prosecutor should have discussed the report with her before relying on it.
 
 
 5
 A few months later, Perrino returned to the Newton Falls prosecutor's office and complained that Mr. Perrino and his girlfriend had broken into her home and assaulted her. Mr. Perrino was charged with domestic violence, aggravated menacing, and criminal trespass. A temporary restraining order against Mr. Perrino was issued. The prosecutor also attempted to have the original sentence reinstated. For reasons that remain unclear, the prosecutor's motion was never heard. According to Perrino, she repeatedly pressed the prosecutor to pursue the motion because her ex-husband continued to violate the restraining order.
 
 
 6
 Several months later, the ex-husband pleaded no contest to this latest domestic violence charge, and all other charges were dropped, including those against his girlfriend. A fine of $1,000 and a term of 180 days were suspended, on the same condition as before. Plaintiff Perrino claims that she was again advised not to appear and was not consulted about the plea bargain.
 
 
 7
 Perrino then expressed her dissatisfaction to defendant Debora Witten, the Newton Falls law director and the supervisor (and, as it so happens, the wife) of the Newton Falls prosecutor. Witten apparently informed Perrino that she had no right to participate in the plea bargaining and that the prosecutor had handled the case as he had seen fit. Perrino then contacted Witten's superior, the Newton Falls city manager. According to Perrino, he refused to discuss the matter with her.
 
 
 8
 Neither the prosecutor nor these other Newton Falls officials ever advised Perrino to address her complaints to the Lordstown village solicitor. However, in response to Perrino's warning that she planned to file ethical charges against the law director and the prosecutor, Witten informed Perrino's attorney that Witten had asked the Lordstown solicitor to appoint a special prosecutor to handle any such charges. Witten also stated that her office would tolerate no further "abuse" from Perrino.
 
 
 9
 When Perrino tried to voice her complaints in Lordstown, she was told that its village solicitor represents only the city council, and she was referred back to the Newton Falls authorities.[2]
 
 II.
 
 10
 Perrino then filed a section 1983 suit against the City of Newton Falls and the Newton Falls prosecutor (individually and in his official capacity), naming in addition the Newton Falls law director and city manager (in their official capacities). The caption of her complaint also listed the "Village of Lordstown" as a defendant, but she never served Lordstown with the complaint and she has never identified any improper conduct on its part.[3] The gist of Perrino's suit was that the Newton Falls prosecutor violated her due process and equal protection rights in his handling of the charges against her ex-husband, and that the other defendants' acquiescence amounted to official city policy.
 
 
 11
 The district court granted defendants' summary judgment motion in favor of the Newton Falls prosecutor on the basis of prosecutorial immunity. In subsequent proceedings, the court also dismissed Perrino's due process claim but found that she adequately had pleaded a constitutional violation by alleging that the prosecutor's actions were pursuant to an official policy of denying domestic violence victims the equal protection of the law. The court reopened discovery on the issue of whether the Newton Falls law director and the city manager could indeed be characterized for section 1983 purposes as "policymaking" officials regarding the prosecution of crimes occurring in Lordstown.
 
 
 12
 After another hearing, the court granted the renewed summary judgment motion in favor of the remaining defendants. The court's decision was based on an Ohio statute which vests responsibility in each village solicitor--here, the unnamed Lordstown official--for the prosecution of criminal cases arising in his or her village. The court also concluded that the contract between Lordstown and the Newton Falls prosecutor was ambiguous. According to the court's reading, it was unclear whether that contract merely gave the Newton Falls prosecutor the power to act on the Lordstown solicitor's behalf (as an agent), or whether it effectively shifted to the prosecutor the solicitor's full, statutorily-granted, final policymaking authority. As Perrino had failed to offer any other probative evidence showing that as a matter of "custom" or "usage" the defendants exercised final policymaking authority over Lordstown's criminal cases, the court concluded that she had not overcome defendants' claim that only an agency relationship existed.
 
 
 13
 Perrino appeals only the summary judgment in favor of Newton Falls and its law director; she does not challenge the dismissal of her due process count or the judgments in favor of the Newton Falls prosecutor and city manager.
 
 III.
 
 14
 We review a grant of summary judgment de novo, applying the same standard used by the district court in considering the motion. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Our analysis, like the district court's, will be guided by the principle that summary judgment is appropriate when the moving party indicates "that the [nonmovant], having had sufficient opportunity for discovery, has no evidence to support an essential element of ... her case," and when the nonmovant then fails to " 'present affirmative evidence' " in response. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).
 
 
 15
 The substantive issue for review is whether Perrino presented sufficient probative evidence to show that the Newton Falls law director is the final policymaker with respect to the handling of Lordstown's criminal cases.[4] This inquiry is grounded in the rejection of respondeat superior as a basis for municipal liability. Newton Falls could not be sued solely because Perrino suffered injury at the hands of its employee, the prosecutor.
 
 
 16
 Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.
 
 
 17
 Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Perrino argues that the prosecutor's allegedly improper handling of the charges against her ex-husband was pursuant to Newton Falls'--via its law director's--"policy or custom" of acquiescing in the discriminatory treatment of domestic abuse complainants.
 
 
 18
 It is now clear, owing to majority approval of these rules in Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989), that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability," and that state law guides the determination of which officials enjoy such authority. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion), quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion). State statutory provisions are not the sole means of identifying the final policymakers with respect to the challenged action, however. A trial judge must also look to "local positive law, as well as 'custom or usage having the force of law.' " Jett, 491 U.S. at 737 (citation omitted).
 
 
 19
 The state law pertinent to our inquiry reads:
 
 
 20
 Except as provided in divisions (B) and (D) of this section, the village solicitor, city director of law, or similar chief legal officer for each municipal corporation within the territory of a municipal court shall prosecute all cases brought before the municipal court for criminal offenses occurring within the municipal corporation for which he is the solicitor, director of law, or similar chief legal officer.
 
 
 21
 Ohio Rev.Code Ann. § 1901.34(A). The statute is silent on whether a village solicitor may delegate prosecutorial responsibility to the "chief legal officer" of another municipality. Delegation of the prosecutorial function is addressed in subsection (D) of the statute, but only with respect to a city's hiring of a "county prosecuting attorney" to perform these tasks. There is no suggestion that the Newton Falls prosecutor qualifies as a "county prosecuting attorney."
 
 
 22
 Perrino does not dispute that, as an initial matter, this provision of Ohio law vests final policymaking authority over Lordstown's criminal cases in the Lordstown village solicitor. She contends, however, that the solicitor contractually delegated that authority to the Newton Falls prosecutor and that, by established "custom and usage," the Newton Falls law director--as the prosecutor's supervisor--assumed final policymaking authority over those cases, just as the law director wielded such authority over the criminal cases which originated in Newton Falls. As evidence of the "custom and usage," Perrino points not only to the contract but also to the fact that the Lordstown village solicitor (via the Lordstown clerk) referred her to the Newton Falls authorities and that when she complained in Newton Falls no one there referred her to the Lordstown village solicitor.[5]
 
 
 23
 We agree with the district court that the contract between Lordstown and the Newton Falls prosecutor does not specify the full extent of the authority delegated by Lordstown. The only evidence of the agreement appearing in the record on appeal is in the form of a 1981 letter from the Lordstown solicitor to the Newton Falls prosecutor. It states:
 
 
 24
 This letter will serve as your authority to act on behalf of the Village of Lordstown, Ohio in the prosecution of criminal cases in the Newton Falls Municipal Court in accordance with the provisions of 1901.34.
 
 
 25
 This authority shall remain in effect until withdrawn by the Village of Lordstown.
 
 
 26
 In her brief, Perrino indicates that the agreement also provided that the Newton Falls prosecutor "will continue to provide full range prosecution services for the Village of Lordstown," and that "[t]he Village of Lordstown shall pay to the City of Newton Falls on a semi-annual basis a percentage of the Prosecutor's salary." Although this additional language does not appear in the 1981 letter or in any other document in the joint appendix, the defendants have not challenged plaintiff's version of the agreement.
 
 
 27
 The language of agency is manifest in the agreement: the Newton Falls prosecutor is to act "on behalf of" Lordstown until the village decides to revoke that authority. Even though we discern more of an agency relationship in this agreement than did the district court, we agree that the contract does not answer the all-important questions posed by the Supreme Court in authority-delegation cases. "As the plurality in Pembaur recognized, special difficulties can arise when it is contended that a municipal policymaker [here, the Lordstown village solicitor] has delegated his policymaking authority to another official." Praprotnik, 485 U.S. at 126 (plurality opinion).[6]
 
 
 28
 "[T]he authority to make municipal policy is necessarily the authority to make final policy." Id. at 127. Subject to review for "egregious attempts by local governments to insulate themselves from liability," id., "[a]uthority to make municipal policy ... may be delegated by an official who possesses such authority," Pembaur, 475 U.S. at 483. As both Praprotnik and Pembaur reveal, the judge in a delegation case must determine whether the municipal official identified as the maker of the policy resulting in the constitutional violation was afforded merely "the final authority to act on [the delegator's] behalf," Praprotnik, 485 U.S. at 139 (Brennan, J., concurring), or whether he was given " 'final authority to establish ... policy with respect to the [challenged] action.' " Id. (citation omitted) (brackets in original). If the delegate's "discretionary decisions are constrained by policies not of [his] own making," or if his decisions are "subject to review by the ... authorized policymakers, they [the delegators] have retained the authority to measure the official's conduct for conformance with their policies." Id. at 127 (emphasis in original) (plurality opinion).
 
 
 29
 Although the contract between Lordstown and the Newton Falls prosecutor does not indicate the extent of the delegated authority, we may safely assume from the perfunctory text that it gave the Newton Falls prosecutor the discretion to handle Lordstown's cases as he in his professional judgment saw fit. We cannot assume, however, that the Lordstown village solicitor thereby conferred on the prosecutor the authority to establish the final policy respecting the prosecution of Lordstown cases. Nor do we know whether the parties intended that Lordstown would retain the right to review the prosecutor's conduct for compliance with its policies and preferences.
 
 
 30
 More significant, however, than the ambiguous nature of the contract is the identity of the remaining defendants in this case. Even if the contract explicitly gave the Newton Falls prosecutor the final policymaking authority regarding Lordstown's criminal cases, it confers no authority of any kind on his supervisor, the Newton Falls law director. For this reason, Perrino argues that the defendant law director exercised final policymaking authority over Lordstown's cases as a matter of custom, rather than as a result of the contract.[7]
 
 
 31
 At this step in our analysis, Perrino's burden in responding to defendants' summary judgment motion is critical. The district judge had reopened discovery to enable Perrino to gather evidence of the law director's final policymaking authority. She presented, as the fruit of these efforts, the fact that the Lordstown city clerk passed along to her the Lordstown village solicitor's advice that Perrino direct her "problem" to the Newton Falls prosecutor. The letter appears only to give instructions on how a Lordstown resident is to go about filing a criminal complaint against someone--presumably, here, the ex-husband--who will then "be found guilty or not guilty" after a hearing. In failing to refer at all to the Newton Falls law director or to identify the official in charge of complaints about the handling of Lordstown cases, the letter is not sufficiently probative on the ultimate issue of whether the Newton Falls law director, by custom, enjoyed final policymaking authority over those cases.
 
 
 32
 Perrino's only other evidence in response to defendants' motion is the fact that no Newton Falls official ever referred her back to Lordstown when she complained about the handling of the charges against her ex-husband. Although we find this silence slightly more indicative of a customary assumption of full responsibility for Lordstown cases, we agree with the district court that it, too, is insufficiently probative. The omission is ambiguous and tends equally to suggest that the law director believed that once the prosecutor had exercised his authority to do what he saw fit with the charges against Mr. Perrino, they warranted no further attention by anyone. As such, this evidence, too, is "merely colorable" on the policymaker issue, and cannot save Perrino's suit from summary judgment. Anderson, 477 U.S. at 249.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 The facts are thus somewhat unusual in that Lordstown did not, as many small villages apparently do, select a private practitioner or law firm to handle its criminal cases, but rather a public official already charged with performing such tasks (albeit for another community)
 
 
 [2]
 This information was conveyed to Perrino in a letter sent by the Lordstown clerk. Apparently referring to the procedure for pressing charges against her ex-husband rather than voicing objections about the Newton Falls prosecutor or law director, the clerk conveyed the Lordstown solicitor's instruction that:
 [I]f a citizen has a problem they are to go into the Newton Falls Court and file a complaint. It is then the responsibility of the Newton Falls Prosecutor to listen to the complaint, arrange for a hearing and the party in question to be found guilty or not guilty.
 I really don't know what the circumstances were in your case....
 
 
 [3]
 At the hearing on the summary judgment motion, Perrino agreed with the district judge's observation that she had "made a deliberate choice here to sue Newton Falls as opposed to Lordstown."
 
 
 [4]
 Since "[o]fficial-capacity suits, in contrast [to personal-capacity suits], 'generally represent only another way of pleading an action against an entity of which an officer is an agent,' " such a suit is, "in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165, 166 (1985) (citation omitted). Thus, the "official policymaker" inquiry is central to both the law director's and the city's entitlement to summary judgment
 
 
 [5]
 Latent throughout her appeal brief is the additional suggestion that because the Newton Falls prosecutor was already handling criminal cases for his own city, and was thus already answerable to the makers of Newton Falls' prosecutorial policy, Lordstown's contract with him necessarily and automatically implicated that supervisory hierarchy. Imposing such "automatic" section 1983 liability on Newton Falls, without stopping to determine whether those Newton Falls supervisors do in fact set the final policy regarding the prosecution of Lordstown criminal cases, surely contravenes the teaching of Monell. According to this facile reasoning, Newton Falls would be liable simply because it employed a wrongdoer
 
 
 [6]
 Although those cases involve the delegation of authority among officials and employees of single entities and not, as here, among officials of two separate municipalities, their distinction between the delegation of discretion versus the delegation of final policymaking authority is still instructive
 
 
 [7]
 Perrino thus seeks to have it both ways with the contract. She points to it as evidence that Lordstown contracted away its authority over its criminal cases but then, because it was not made with the defendant law director, she attempts to diminish the contract's significance to this case